# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JEREMIAH BUSBY (R-19996), | ) | |
| | ) | |
| Petitioner, | ) | 14 C 9233 |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| KIMBERLY BUTLER, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

In November 2007, Petitioner Jeremiah Busby was found guilty of first-degree murder after a jury trial in the Circuit Court of Cook County, Illinois. He was sentenced to fifty years' imprisonment. In November 2014, he filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254. For the reasons provided herein, the petition is denied.

## Factual Background[1]

Busby's conviction arose from the fatal shooting of Shaun Henry on September 18, 2005, in Maywood, Illinois. Resp't Ex. A, at 2, ECF No. 18. Six days before the shooting, a man named James Cavanaugh went to an apartment to purchase drugs from a person named "Silk." *Id.* at 6. Busby was present at the apartment. *Id.* Cavanaugh asked for a line of credit to purchase drugs, but he was told that "Silk and [Busby] wanted their money." *Id.* Silk and Busby drove Cavanaugh home in Cavanaugh's black Hyundai Sonata. *Id.* Once they arrived,

---

[1] The following facts are drawn from the opinions issued by the state appellate court on direct and postconviction review. *See* Resp't Ex. A, Order, *People v. Busby*, No. 1-08-0341 (Ill. App. Ct. Mar. 16, 2010) (direct appeal); *People v. Busby*, No. 1-11-3213, 2013 WL 6813899 (Ill. App. Ct. Dec. 19, 2013) (postconviction review). In a federal habeas proceeding, the factual findings of the state appellate court are presumed to be correct, unless the petitioner offers clear and convincing evidence showing otherwise. 28 U.S.C. § 2254(e)(1); *Badelle v. Correll*, 452 F.3d 648, 659 (7th Cir. 2006). Busby has pointed to no such evidence in his filings.

Cavanaugh went inside by himself. *Id.* When he looked outside a few hours later, his black Hyundai Sonata was gone. *Id.*

Cary Tribble, an acquaintance of Busby, testified that he was driving in a black car with Busby around 1:00 a.m. on the night of the shooting. *Id.* at 2. According to Tribble, Busby stopped the car in front of a small apartment building at 27 South 20th Street in Maywood. *Id.* Several people were gathered in front of the building, including Henry, the shooting victim. *Id.* Busby got out of the car, carrying a gun, and he followed Henry around to the back of the building. *Id.* After Tribble lost sight of Busby, he heard several gunshots. *Id.* Tribble then saw Busby run back toward the car, still holding a gun. *Id.* Busby announced that he had "shot the guy," and Busby and Tribble drove away. *Id.*

Siblings Christopher and Clarissa Hampton lived at 27 South 20th Street at the time of the shooting. *Id.* at 3. They knew Busby and Henry "from school and around the neighborhood." *Id.* Christopher testified that, just before the shooting, he and Clarissa had been in their front yard with Henry and some friends when "a black car turned around in front of [the apartment building] and left." *Id.* The Hamptons and their friends went inside and then heard four or five gunshots. *Id.* at 3–4. After hearing the gunshots, the Hamptons went outside and saw Henry lying in the backyard. *Id.* At trial, the Hamptons denied seeing Busby the night of the shooting and also denied ever telling the police otherwise. *Id.*

Police officer Sergio Cordoba responded to the shooting. *Id.* at 4. When he arrived at the scene, he found the Hamptons in the backyard with Henry's body. *Id.* According to Cordoba, the Hamptons told him they had seen Busby get out of a black car and walk toward the building. *Id.* at 5. Cordoba also testified that Christopher Hampton told him Busby had been carrying a gun. *Id.*

Later, Detective David Gude interviewed each of the Hamptons separately about the shooting. *Id.* According to Gude, Christopher Hampton told him that he had seen Busby pull up in a dark-colored vehicle, exit the vehicle while "holding an object under his shirt," and follow Henry behind the building. *Id.* He then heard several gunshots, and he saw Busby run back to the vehicle and drive away. *Id.* Clarissa Hampton told Gude that she had seen Busby pull up in a dark-colored Hyundai Sonata and exit the vehicle with a gun. *Id.*

Gude also testified that, while investigating the shooting, he spoke with other witnesses besides the Hamptons. *Busby*, 2013 WL 6813899, at *2. On cross-examination, Gude was asked whether those other witnesses had viewed a photo array or otherwise identified Busby. *Id.* In response, Gude said he would have to see "the report" to answer such questions. *Id.* The parties held a sidebar, and defense counsel stated that the prosecution had never disclosed "any reports that any other people identified [Busby]." *Id.*

In November 2005, about two months after the shooting, police arrested Busby. Resp't Ex. A, at 6. Following the arrest, Detective Gude interviewed Busby, and Busby gave a videotaped statement that was admitted into evidence at trial. *Id.* In the statement, Busby indicated that he had previously had an altercation over drug customers with Henry, but he denied shooting Henry. *Id.* at 6–7. He acknowledged that he had been in the black Hyundai Sonata at some point, but he explained that "all of the drug dealers borrowed that car." *Id.* at 7. He also claimed that he had been in Rockford since early September, and he told Gude that he had a Greyhound bus ticket to Rockford for September 4, 2005. *See id.* Gude went to the bus station after interviewing Busby, but he was unable to locate information indicating that Busby had purchased a ticket to Rockford for that date. *Id.* at 8.

## Procedural Background

Following his jury trial in the Circuit Court of Cook County, Busby was convicted of first-degree murder and sentenced to fifty years' imprisonment. *Id.* at 1. The Illinois Appellate Court affirmed his conviction. *Id.* at 21. Busby subsequently filed a petition for leave to appeal (PLA) in the Illinois Supreme Court. Resp't Ex. E, PLA, *People v. Busby*, No. 110243. In the PLA, Busby raised only two claims, both of which he had also raised before the Illinois Appellate Court. First, he claimed that the prosecution had improperly used the Hamptons' prior inconsistent statements to police as substantive evidence, when they were admissible only for impeachment. *Id.* at 11. Second, he claimed that trial counsel had rendered ineffective assistance by failing to object to this use of the Hamptons' prior inconsistent statements. *Id.* at 15. The Illinois Supreme Court denied the PLA on September 29, 2010. Resp't Ex. F.

Next, Busby filed a postconviction petition in the Circuit Court of Cook County. Resp't Ex. P. The court dismissed the petition, and Busby appealed. In his postconviction proceeding before the Illinois Appellate Court, Busby raised only two claims. First, he claimed that the prosecution had violated his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose police reports indicating that several witnesses other than the Hamptons had identified Busby. Resp't Ex. G, Br. & Argument, at 10, 13. Second, he claimed that appellate counsel had rendered ineffective assistance by failing to challenge the nondisclosure of the police reports on direct appeal. *Id.* The Illinois Appellate Court affirmed the dismissal of the postconviction petition. *Busby*, 2013 WL 6813899, at *1.

Busby then filed another PLA in the Illinois Supreme Court. Resp't Ex. M, PLA, *People v. Busby*, No. 117340. In the PLA, Busby raised only one claim: a claim for ineffective assistance of appellate counsel based on counsel's failure to argue that the prosecution had

violated Illinois Supreme Court Rule 412 by failing to disclose the police reports. *Id.* at 3, 11–14. The Illinois Supreme Court denied the PLA on May 28, 2014. Resp't Ex. N.

In November 2014, Busby filed a *pro se* habeas corpus petition in this Court pursuant to 28 U.S.C. § 2254. His petition advances the following claims:

1. The prosecution improperly (a) argued to the jury that Busby had threatened two witnesses; and (b) vouched for the credibility of state witnesses.

2. The cumulative effect of the prosecution's misconduct was prejudicial.

3. Trial counsel rendered ineffective assistance by (a) failing to object to the prosecution's argument that Busby had threatened witnesses; (b) suggesting that the jury hear Busby's entire post-arrest statement; (c) failing to object to Cavanaugh's testimony; (d) failing to object to the admission of evidence regarding other crimes Busby had committed; and (e) eliciting testimony from Detective Gude suggesting that witnesses other than the Hamptons had identified Busby as the shooter.

4. Appellate counsel rendered ineffective assistance by failing to raise claims presented to the Illinois Appellate Court in the PLA on direct review.

5. The prosecution improperly used the Hamptons' prior inconsistent statements as substantive evidence, rather than using them only for impeachment.

6. The prosecution violated Busby's due process rights by failing to disclose evidence of police reports suggesting that witnesses other than the Hamptons had identified Busby as the shooter.

7. Trial counsel rendered ineffective assistance by failing to object to the prosecution's use of the Hamptons' prior inconsistent statements as substantive evidence.

8. Appellate counsel rendered ineffective assistance by failing to raise a claim on direct appeal regarding the prosecution's failure to disclose evidence of certain police reports.

Pet. at 5–14, ECF No. 9.[2]

---

[2] To facilitate understanding of this Memorandum Opinion, the claims have been arranged in an order that differs from the order in which they are presented in Busby's habeas petition. Throughout the Opinion, the Court will refer to the claims as "Claim 1," "Claim 2," and so on, in accordance with the order in which they are listed above.

5

## Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a writ of habeas corpus may issue only if the petitioner demonstrates that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). A federal habeas court may grant habeas relief only if it determines that the state court's decision on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that the state court's decision was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). Under this standard, federal habeas relief is available only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This standard of review is highly deferential to the state court's decisions and is "intentionally difficult to meet." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

Before considering the merits of a habeas petition, however, a federal habeas court must ensure that the petitioner has exhausted all available remedies in state court and has avoided procedural default. 28 U.S.C. § 2254(b)(1)(A); *Bocian v. Godinez*, 101 F.3d 465, 468 (7th Cir. 1996). Procedural default occurs where a petitioner failed to fairly present his claims at each level of state-court review—including in a petition for leave to appeal before the state supreme court—either on direct appeal or in postconviction proceedings. *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008); *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 842–46 (1999)). Procedural default also occurs where a petitioner failed to comply with state procedural requirements and the state court found those failures to be an adequate and independent basis for denying his claim. *Coleman v. Thompson*,

501 U.S. 722, 729–30 (1991); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). If a claim is procedurally defaulted, a petitioner is not entitled to federal habeas relief unless he can establish that cause exists for the default and actual prejudice was suffered, or that a fundamental miscarriage of justice resulted in a conviction despite the petitioner's actual innocence. *Buelow v. Dickey*, 847 F.2d 420, 425 (7th Cir. 1988) (citing *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

## Analysis

### I.   Claims 1–6: Procedural Default

First, Respondent contends that Claims 1–4 and 6 of Busby's habeas petition are procedurally defaulted because Busby failed to raise them in one complete round of state-court review. Respondent also argues that Claim 5 is procedurally defaulted because the state court rejected the claim on an adequate and independent state procedural ground. For the reasons that follow, the Court agrees that Claims 1–6 are procedurally defaulted. In addition, the Court concludes that the procedural defaults are not excused. The Court therefore declines to reach Claims 1–6 on the merits.

#### A.   Procedural Default

To avoid procedural default, a petitioner must fairly present his claims through one full round of state-court review, either on direct appeal or in postconviction proceedings. *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014); *Malone*, 538 F.3d at 753 (citing *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004)). In Illinois, this means that a petitioner must have presented a claim to the Illinois Appellate Court as well as in a PLA before the Illinois Supreme Court. *Guest*, 474 F.3d at 930 (citing *O'Sullivan*, 526 U.S. at 842–46). "Adequate presentation of a claim to the state courts requires the petitioner to present both the operative facts and the legal principles that control each claim." *Pole v. Randolph*, 570 F.3d 922, 934 (7th Cir. 2009).

7

On direct appeal, Busby presented only two claims both before the Illinois Appellate Court and in his PLA: (1) his claim that the prosecution improperly used the Hamptons' prior inconsistent statements as substantive evidence, rather than solely for impeachment purposes; and (2) his ineffective-assistance claim based on trial counsel's failure to object to this use of the Hamptons' prior inconsistent statements. Resp't Ex. A, at 14–16; Resp't Ex. E, at 11, 15. These claims respectively appear in Busby's habeas petition as Claims 5 and 7.

In his postconviction proceeding, Busby presented only one claim both before the Illinois Appellate Court and in his PLA: an ineffective-assistance claim based on appellate counsel's failure to challenge the prosecution's nondisclosure of certain police reports in violation of Illinois Supreme Court Rule 412. Resp't Ex. M, at 3, 11–14. To the extent this claim appears in Busby's habeas petition, it appears only in Claim 8.[3]

In sum, the only claims that Busby presented in one complete round of state-court review are Claims 5 and 7 (which he presented on direct review) and Claim 8 (which he presented, at least in part, on postconviction review). As such, the remaining claims in his habeas petition—that is, Claims 1–4 and 6—are procedurally defaulted.[4]

---

[3] As noted above, Claim 8 alleges that appellate counsel rendered ineffective assistance by failing to raise a claim (either on due process grounds or on other, nonconstitutional grounds—the habeas petition does not specify) regarding the nondisclosure of certain police reports.

[4] In his reply, Busby argues that none of his claims can be procedurally defaulted because he has exhausted his state remedies. Reply at 5, ECF No. 19. This argument confuses the issues of exhaustion and procedural default, which are related but distinct prerequisites to federal habeas relief. *See, e.g.*, *O'Sullivan*, 526 U.S. at 848 ("[W]e ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts."); *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991) (quoting *Henderson v. Thieret*, 859 F.2d 492, 496 (7th Cir. 1988)) ("Before considering a petition for habeas corpus on its merits, a district court must make two inquiries—whether the petitioner exhausted all available state remedies and whether the petitioner raised all his claims during the course of the state proceedings."). Thus, the fact that Busby has exhausted his state remedies by pursuing direct appeals and postconviction relief in the Illinois courts is insufficient to save his claims from procedural default.

Moreover, although it was presented in a complete round of state-court review, Claim 5 is also procedurally defaulted, because the last state court to adjudicate the claim rejected it on an adequate and independent state procedural ground. *See Coleman*, 501 U.S. at 729–30; *Lee v. Davis*, 328 F.3d 896, 899–900 (7th Cir. 2003). A state procedural rule is considered an "independent" ground for decision when the state court actually relied on the rule as a basis for its disposition of the case. *Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010) (citing *Smith v. McKee*, 598 F.3d 374, 382 (7th Cir. 2010)). A state procedural rule is considered "adequate" when it is "a firmly established and regularly followed state practice at the time it is applied." *Id.* (citing *Smith*, 598 F.3d at 382).

The last state court to adjudicate Claim 5—that is, Busby's claim that the prosecution improperly used the Hamptons' prior inconsistent statements as substantive evidence—was the Illinois Appellate Court on direct review. *See* Resp't Ex. A, at 13–16. The Illinois Appellate Court rejected the claim, reasoning that it had been forfeited because Busby had not raised it at trial or in a post-trial motion. *Id.* at 13 (noting that, as Busby conceded, the claim was raised neither at trial nor in a post-trial motion); *id.* at 8 (citing *People v. Herron*, 830 N.E.2d 467, 472 (Ill. 2005)) ("Issues not objected to and not raised in a posttrial motion are forfeited."). The court therefore reviewed the claim only for plain error, and it concluded that no such error had been established. *Id.* at 13–15.

The Seventh Circuit has held that an Illinois court's rejection of a claim on grounds of waiver or forfeiture is an adequate and independent state procedural ground of decision, such that the claim is procedurally defaulted. *See Richardson*, 745 F.3d at 268–72; *Kaczmarek*, 627 F.3d at 592–93. In addition, even when an Illinois court reviews a waived or forfeited claim for plain error, the court's plain-error review does not save the claim from procedural default.

9

*Kaczmarek*, 627 F.3d at 592–93; *Miranda v. Leibach*, 394 F.3d 984, 992 (7th Cir. 2005). Here, the Illinois Appellate Court made clear that it was rejecting Busby's claim regarding the substantive use of the Hamptons' prior inconsistent statements on grounds of forfeiture. Resp't Ex. A, at 8, 13. Because the court's application of Illinois's forfeiture rule was an adequate and independent basis for the court's denial of the claim, Claim 5 is procedurally defaulted.

### B. Cause and Prejudice

Because Claims 1–6 are procedurally defaulted, the Court will consider them on the merits only if they are excused under the cause-and-prejudice exception to procedural default.[5] *See Wainwright*, 433 U.S. at 91; *Buelow*, 847 F.2d at 425. To establish that there is cause to excuse a procedural default, a petitioner must show that an objective, external factor "impeded [his] efforts to raise the claim in an earlier proceeding." *Smith*, 598 F.3d at 382. The Supreme Court has held that sufficient cause to excuse a procedural default may consist of (1) interference by officials that made it impractical to raise the claim in the state proceeding, (2) a showing that

---

[5] A procedural default may also be excused by the actual-innocence exception, which applies where a petitioner shows that, in light of newly discovered evidence, no reasonable juror would have voted to find him guilty beyond a reasonable doubt. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). Busby has not argued that he is actually innocent, much less pointed to newly discovered evidence to substantiate a claim of actual innocence. The Court therefore addresses only the cause-and-prejudice exception to procedural default and does not further consider the actual-innocence exception.

In addition, the Court notes that the narrow exception to procedural default set forth in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), is inapplicable. "In *Martinez* and *Trevino*, the Supreme Court held that procedural default caused by ineffective postconviction counsel may be excused if state law, either expressly or in practice, confines claims of trial counsel's ineffectiveness exclusively to collateral review." *Nash v. Hepp*, 740 F.3d 1075, 1079 (7th Cir. 2014). Here, *Martinez* and *Trevino* are inapplicable because Illinois law did not require Busby to raise claims for ineffective assistance of trial counsel exclusively on collateral review. *See, e.g.*, *Olawale v. Hodge*, No. 13 C 8535, 2016 WL 278871, at *8 n.4 (N.D. Ill. Jan. 22, 2016); *Schneider v. Edwards*, No. 15-CV-0070, 2015 WL 5951857, at *7–8 (N.D. Ill. Oct. 13, 2015).

the factual or legal basis for the claim was not reasonably available to counsel, or (3) ineffective assistance of counsel. *Guest*, 474 F.3d at 930 (citing *McCleskey v. Zant*, 499 U.S. 467 (1991)).

The only basis for the cause-and-prejudice exception that Busby has arguably raised in his filings is ineffective assistance of counsel.[6] Where a habeas petitioner asserts that ineffective assistance of counsel is cause to excuse the procedural default of another claim, the ineffective-assistance claim must itself have been raised in state court. *Dellinger v. Bowen*, 301 F.3d 758, 766 (7th Cir. 2002) (citing *Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000)). If the ineffective-assistance claim is itself procedurally defaulted, then it cannot excuse the procedural default of another claim. *Id.* at 766–67.

As discussed above, Busby's only ineffective-assistance claims that are not procedurally defaulted are (1) his claim based upon trial counsel's failure to object to the substantive use of the Hamptons' prior inconsistent statements (Claim 7) and (2) his claim based upon appellate counsel's failure to challenge the nondisclosure of certain police reports on direct review (Claim 8). Any other ineffective-assistance claims are procedurally defaulted. *See Pole*, 570 F.3d at 935 ("[I]f a petitioner fails to assert in the state courts a particular factual basis for the claim of

---

[6] In particular, in a supplement filed after his reply brief, Busby asserts: "[B]ecause appellate defense counsel abandoned a viable federal defense on direct appeal . . . Busby *was* deprived of the effective assistance of appellate counsel and has . . . established *cause* for his failure to assert that right on direct appeal under *Wainwright v. Sykes*." Pet'r's Mot. Filing Add'tl P. & A. at 4, ECF No. 22 (emphasis in original). Construed liberally, *see Ward v. Jenkins*, 613 F.3d 692, 697 (7th Cir. 2010), the Court understands Busby to be arguing that the procedural default of his claims should be excused because he would have raised them in his state-court proceedings but for the ineffective assistance of counsel.

ineffective assistance, that particular factual basis may be considered defaulted.").[7] Thus, the only procedurally defaulted claims that can potentially be excused by ineffective assistance of counsel are Busby's claim that the prosecution improperly used the Hamptons' prior inconsistent statements as substantive evidence (Claim 5) and his claim that the prosecution violated his due process rights by failing to disclose evidence of certain police reports (Claim 6). *See Dellinger*, 301 F.3d at 766.

As will be seen below, however, Busby's only non-defaulted claims for ineffective assistance of counsel fail on the merits. As such, these ineffective-assistance claims do not suffice as cause to excuse Busby's procedural default of Claims 5 and 6. The Court thus concludes that the procedural defaults of Claims 1–6 are not excused.

## II. Claim 7: Ineffective Assistance of Trial Counsel for Failure to Object to the Use of the Hamptons' Statements

In Claim 7, Busby alleges that trial counsel rendered ineffective assistance by failing to object to the prosecution's use of the Hamptons' prior inconsistent statements as substantive evidence, rather than only as impeachment evidence. Whether trial counsel's failure to raise such an objection gives rise to an ineffective-assistance claim is evaluated under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Lee*, 328 F.3d at 900.

---

[7] To the extent Busby intends to argue that there is a second level of "cause" to excuse the procedural default of any ineffective-assistance claims, such that those claims should be permitted to serve as a primary-level "cause" excusing the procedural default of claims raised in his habeas petition, the Court rejects those arguments. First, such arguments are defaulted, because Busby did not present them to the state court. In addition, he cannot raise a claim for ineffective assistance of postconviction counsel as cause to excuse the default of any claims for ineffective assistance of appellate or trial counsel, because there is no constitutional right to postconviction counsel. *See Dellinger*, 301 F.3d at 767 & n.10 (citing *Pitsonbarger v. Gramley*, 141 F.3d 728, 737 (7th Cir. 1998)) (rejecting similar argument regarding second level of "cause" based on ineffective assistance of counsel).

Under *Strickland*, a petitioner seeking to prevail on an ineffective-assistance claim must show that (1) counsel's performance fell below an objective standard of reasonableness under "prevailing professional norms," and (2) the petitioner suffered prejudice as a result of counsel's deficient performance. 466 U.S. at 687–88; *accord Harrington*, 562 U.S. at 104. To establish prejudice under the second part of this test, the petitioner "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 694). In addition, under AEDPA, the petitioner must show that the last state court decision to adjudicate his ineffective-assistance claim on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that the decision was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d); *McNary v. Lemke*, 708 F.3d 905, 913 (7th Cir. 2013).[8]

The last state court to review Busby's ineffective-assistance claim based on trial counsel's failure to object to the substantive use of the Hamptons' prior inconsistent statements was the Illinois Appellate Court on direct review. Resp't Ex. A, at 16. In analyzing the claim, the court first noted that "[c]laims of ineffective assistance of counsel are judged according to the two-prong test established in *Strickland v. Washington*." *Id.* Applying this test, the court rejected Busby's ineffective-assistance claim because, even assuming *arguendo* that counsel's performance was deficient, the court "[did] not find that [Busby] was sufficiently prejudiced by this deficient performance." *Id.* The court reasoned that Busby had not been prejudiced because, although the prosecutor had improperly referred to the Hamptons' prior inconsistent statements

---

[8] AEDPA's deferential standard of review applies not only to a court's consideration of the merits of an ineffective-assistance claim, but also to the consideration of whether an ineffective-assistance claim can suffice as cause to excuse the procedural default of another claim. *See Gray v. Hardy*, 598 F.3d 324, 331 (7th Cir. 2010); *Wrinkles v. Buss*, 537 F.3d 804, 813 (7th Cir. 2008).

as "the truth" during closing argument, the remarks were made only briefly. *Id.* at 14, 16. In addition, any error was sufficiently cured because, "immediately following these remarks, the prosecutor gave an oral recitation of [a pattern jury instruction regarding the proper use of prior inconsistent statements], followed by the trial court's limiting instruction." *Id.* In light of the nature of the remarks, as well as the limiting instructions, the court concluded that "the prosecutor's improper closing remarks did not deny defendant a fair trial." *Id.* at 16. In turn, because there was "no reasonable probability that, but for counsel's failure to object, the result of the trial would be different," the court held that Busby "ha[d] not sustained his burden to establish that he received ineffective assistance of counsel." *Id.*

Busby cannot demonstrate that the Illinois Appellate Court's ruling involved an unreasonable application of clearly established federal law. The court correctly identified *Strickland*'s two-part test as the governing legal standard. The court then reasonably applied *Strickland* in finding that Busby could not establish that he was prejudiced by trial counsel's failure to object to the substantive use of the Hamptons' prior inconsistent statements. As the court noted, the limiting instructions recited by the prosecution and given by the trial judge were sufficient to mitigate any error resulting from the statements' use. As such, the error itself could have had only a negligible effect on the proceeding, if any effect at all, and an objection from defense counsel was accordingly unlikely to affect the trial's outcome.

Moreover, ample substantive evidence apart from the Hamptons' prior inconsistent statements supported Busby's conviction, making it even less likely that the trial's outcome was affected by counsel's failure to object to the statements' use. For example, Cary Tribble testified that, while he was driving in a black car with Busby on the night of the shooting, Busby stopped the car at the address where the shooting occurred. *Id.* at 2. Tribble saw Busby leave the car

14

with a gun and follow the shooting victim. *Id.* Tribble then heard several gunshots, and Busby returned to the car and stated that he had "shot the guy." *Id.* Furthermore, Christopher Hampton corroborated Tribble's testimony by testifying at trial that he had seen a black car at the scene of the crime shortly before the shooting occurred. *Id.* at 3. In light of such incriminating evidence, the Court cannot say that "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Harrington*, 562 U.S. at 102; *see, e.g.*, *Caffey v. Butler*, 802 F.3d 884, 902 (7th Cir. 2015) (rejecting ineffective-assistance claim where state court "reasonably applied *Strickland* in finding no prejudice").

For these reasons, Busby has not demonstrated prejudice in support of his ineffective-assistance claim based on trial counsel's failure to object to the substantive use of the Hamptons' prior inconsistent statements. Thus, Claim 7 fails on the merits and does not offer a basis for granting habeas relief.

### III. Claim 8: Ineffective Assistance of Appellate Counsel for Failure to Raise a Claim Regarding Nondisclosure of Police Reports

In Claim 8, Busby asserts that appellate counsel rendered ineffective assistance by failing to raise a claim on direct review regarding the prosecution's nondisclosure of police reports suggesting that witnesses other than the Hamptons identified Busby as the shooter. As a threshold matter, the Court notes that Busby's habeas petition does not specify whether, according to Busby, appellate counsel should have challenged the nondisclosure of these police reports on due process grounds or instead on nonconstitutional grounds. For the reasons that follow, however, neither version of this claim has merit.

#### A. Appellate Counsel's Failure to Raise a Due Process Claim

In his PLA to the Illinois Supreme Court on postconviction review, Busby alleged only that appellate counsel should have challenged the nondisclosure of the police reports on

15

nonconstitutional grounds—namely, under Illinois Supreme Court Rule 412, which imposes various state discovery obligations on the government. Resp't Ex. M at 3, 11–14. Thus, to the extent Busby now alleges that appellate counsel should have challenged the nondisclosure of the police reports on due process grounds, rather than nonconstitutional grounds, this ineffective-assistance claim is procedurally defaulted because it was not presented in his PLA on postconviction review. *Guest*, 474 F.3d at 930.

Even if this ineffective-assistance claim were not procedurally defaulted, however, it nevertheless would fail on the merits. The last state court to review this claim was the Illinois Appellate Court on postconviction review. *Busby*, 2013 WL 6813899, at *3–4. Before directly addressing the ineffective-assistance claim, the court rejected Busby's underlying claim that the prosecution's failure to disclose the police reports was a violation of due process under *Brady*. *Id.* at *3. In so holding, the court first noted that a party seeking to establish a due process violation under *Brady* must show that: "(1) the evidence was suppressed by the State either willfully or inadvertently; (2) the undisclosed evidence is favorable to the accused because it is either exculpatory or impeaching; and (3) the accused was prejudiced because the evidence is material to guilt or punishment." *Id.* The court concluded that Busby had not established the second or third element of a *Brady* violation, reasoning as follows:

> Here, the evidence shows that Detective Gude testified that even with all the information he obtained from the [three] additional eyewitnesses . . . his only suspect in the murder investigation was still [Busby]. If anything, this implies that any evidence disclosed from these witnesses was favorable to the State. Regardless, [Busby's] argument that any evidence from these three witnesses would be favorable to him is at best speculation and, as such, fails to show that such evidence was favorable to him. Thus, [Busby] cannot establish the second element of *Brady*, and his claim should fail on that basis alone.
>
> However, [Busby] has also failed to show that the suppressed evidence was material to his claim. . . . Here, the evidence at trial shows that Tribble testified that on the day of the murder, he had driven with [Busby] . . . to the apartment building. Once at the apartment building, Tribble observed [Busby] get out of the

16

> car with a gun in hand and walk around the back of the apartment with the victim
> . . . . Tribble then heard gunshots, after which he observed [Busby] run back to
> the car with the gun still in his hand. When [Busby] got into the car, Tribble
> heard him [say] . . . that he had "shot the guy." The evidence further shows that
> on the night of the murder, [Busby] was in possession of [ ] Cavanaugh's vehicle,
> a black Hyundai Sonata, which had been seen at the apartment building on the
> night of the murder. . . . Based on the above facts, there was sufficient evidence
> to convict [Busby] such that we cannot say that any alleged suppressed evidence
> from the statements of [other witnesses referenced in the police reports] would
> undermine confidence in the verdict.

*Id.* (internal quotation marks and citations omitted). The court accordingly rejected Busby's due process claim. *Id.* It then turned to address Busby's ineffective-assistance claim based on appellate counsel's failure to raise the due process claim on direct appeal. *Id.* at *4. It reasoned that, because the due process claim itself was nonmeritorious, Busby could not have been prejudiced by appellate counsel's failure to raise the claim. *Id.* In turn, the court concluded that Busby could not satisfy *Strickland*'s two-part test for ineffective assistance of counsel. *Id.*

Busby cannot show that the Illinois Appellate Court's decision involved an unreasonable application of clearly established federal law. The court correctly identified *Strickland*'s two-part test as the standard governing his ineffective-assistance claim, as well as the three-part test governing his underlying due process claim.[9] It then reasonably applied those standards in holding that Busby could prove neither the second nor third element of his *Brady* claim and that, in turn, appellate counsel could not have prejudiced Busby by failing to raise a nonmeritorious *Brady* claim. *See McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996) (holding that, in

---

[9] Although the Illinois Appellate Court did not directly cite federal case law in identifying the two-part test under *Strickland* or the three-part test for due process violations under *Brady*, it described those tests accurately in its decision. *Compare Busby*, 2013 WL 6813899, at *3–4, *with Harrington*, 562 U.S. at 104 (describing *Strickland*), *and Strickler v. Greene*, 527 U.S. 263, 280 (1999) (describing *Brady*). As long as a state court does not contradict controlling Supreme Court precedents, the state court need not cite those precedents in order to issue a decision that is not contrary to, or an unreasonable application of, clearly established federal law under AEDPA. *Early v. Packer*, 537 U.S. 3, 8 (2002).

17

order to establish prejudice caused by appellate counsel's performance under *Strickland*, a prisoner seeking postconviction relief must show that "if his appellate counsel had raised the [ ] claims on direct appeal that there would have been a reasonable probability that the claims would have been successful"); *see also McCray v. Rednour*, 441 F. App'x 376, 379 (7th Cir. 2011) ("Since a fairminded jurist could conclude that [the habeas petitioner's] argument lacked merit and that counsel was not ineffective for failing to pursue a nonmeritorious motion . . . the appellate court reasonably applied *Strickland* in reaching its decision.").

For these reasons, Busby has not demonstrated prejudice with respect to his ineffective-assistance claim based on appellate counsel's failure to challenge the prosecution's nondisclosure of police reports on due process grounds. As such, even if the claim had not been procedurally defaulted, the claim would fail on the merits.[10]

**B.     Appellate Counsel's Failure to Raise a Nonconstitutional Claim**

To the extent the ineffective-assistance claim in Claim 8 relies on an underlying theory that the prosecution committed a nonconstitutional violation, rather than a due process violation, the claim fares no better. The only such claim that Busby presented in a full round of state-court review is his claim that appellate counsel rendered ineffective assistance by failing to argue that

---

[10]     In support of the merits of his ineffective-assistance claims, Busby cites three cases in which courts have found ineffective assistance of counsel under *Strickland*. *See* Pet'r's Mot. Filing Add'tl P. & A. at 1–5 (citing *Campbell v. Reardon*, 780 F.3d 752 (7th Cir. 2015); *Freeman v. Lane*, 962 F.2d 1252 (7th Cir. 1992); *People v. Simpson*, 993 N.E.2d 527 (Ill. App. Ct. 2013)). Each of these cases is readily distinguishable from the case at hand. In *Campbell*, the Seventh Circuit found that a state court unreasonably applied *Strickland* where it ignored counsel's failure to investigate exculpatory sources of evidence prior to trial and also failed to consider whether counsel's failure was prejudicial. 780 F.3d at 762–72. In *Freeman*, the Seventh Circuit found ineffective assistance where counsel failed to raise a meritorious Fifth Amendment claim. 962 F.2d at 1257–59. And in *Simpson*, the court found ineffective assistance where counsel failed to object to testimony indicating that the defendant confessed to murder, reasoning that "[t]he erroneous admission of a confession into evidence rarely constitutes harmless error." 993 N.E.2d at 531–32. Because these cases involved facts and legal issues that differ significantly from those in the present case, Busby's reliance on them is unpersuasive.

the prosecution's nondisclosure of the police reports violated Illinois Supreme Court Rule 412. Resp't Ex. G, at 10, 13; Resp't Ex. M, at 3, 11–14. The last state court to review this ineffective-assistance claim was the Illinois Appellate Court on postconviction review. *Busby*, 2013 WL 6813899, at *4. The court rejected the claim as waived because Busby had not adequately presented it in his original postconviction petition. *Id.* This application of Illinois's waiver rule was an adequate and independent state procedural basis for the court's decision. As such, to the extent Claim 8 relies on an underlying theory that the prosecution committed a nonconstitutional violation, the claim is procedurally defaulted and does not provide a basis for granting habeas relief. *See Coleman*, 501 U.S. at 729–30; *Richardson*, 745 F.3d at 268–72; *Kaczmarek*, 627 F.3d at 592–93.

## Conclusion

For the reasons stated herein, the petition for a writ of habeas corpus [9] is denied. The Court declines to issue a certificate of appealability under Rule 11 of the Rules Governing Section 2254 Proceedings in the United States District Courts, because Busby has not made a "substantial showing of the denial of a constitutional right" such that reasonable jurists could debate this Court's resolution of the case. 28 U.S.C. § 2253(c)(2); *Narvaez v. United States*, 674 F.3d 621, 626 (7th Cir. 2011) (citing *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000)). This case is hereby terminated.

**IT IS SO ORDERED.**  **ENTERED   12/15/17**

_____
**John Z. Lee**
**United States District Judge**